DISCIPLINARY COUNSEL *v.* JONES.

[Cite as *Disciplinary Counsel v. Jones,*
103 Ohio St.3d 590, 2004-Ohio-5697.]

(No. 2004–1013—Submitted August 17, 2004—Decided November 17, 2004.)

**Per Curiam.**

{¶ 1} Respondent, Shirley May Jones of Cuyahoga Falls, Ohio, Attorney Registration No. 0030085, was admitted to the practice of law in Ohio in 1985. On April 9, 2003, we indefinitely suspended respondent from practice for her repeated failure to properly administer estates and her failure to cooperate in the investigation of that misconduct. *Akron Bar Assn. v. Jones,* 98 Ohio St.3d 422, 2003-Ohio-1497, 786 N.E.2d 456.

{¶ 2} On June 9, 2003, relator, Disciplinary Counsel, charged in a two-count complaint that respondent had again violated the Code of Professional Responsibility in administering two other estates and failing to cooperate in the ensuing disciplinary investigation. Respondent was served the complaint but did not answer, and relator moved for default pursuant to Gov.Bar R. V(6)(F). The Board of Commissioners on Grievances and Discipline appointed a master commissioner to consider the cause. The master commissioner granted the motion for default, making findings of fact, conclusions of law, and a recommendation, all of which the board adopted.

Count I

*The Feldman Grievance*

{¶ 3} Suzanne Feldman's mother died on January 31, 2001, leaving her as co-successor trustee of the Eliot and Sylvia Grant Trust. In February 2001, Feldman retained respondent to close the trust, distribute the assets to the

beneficiaries, and prepare an Ohio estate tax return. Respondent asked Feldman to handle the transfer of assets herself and to contact respondent when the transfers were completed. Feldman managed to have title to the assets transferred.

{¶ 4} Respondent promised to record a deed that the transfer of assets apparently necessitated, and in February 2001, Feldman gave respondent a $105 check for filing fees that respondent later cashed. By June 27, 2001, respondent had prepared the deed and given Feldman what appeared to be a completed Ohio estate tax return. Feldman gave respondent a $20,145.35 check to pay the estate taxes and a $450 check for attorney fees.

{¶ 5} Although respondent had assured Feldman that she would record the deed and also file the estate tax return, Feldman noticed after some time that the check for estate taxes had not been negotiated. Feldman attempted to contact respondent on numerous occasions, but respondent did not reply. Feldman also learned from the Summit County Recorder's Office that the deed had not been filed. Feldman then left a note at respondent's residence asking respondent to contact her, but Feldman never heard from respondent again. In the meantime, respondent cashed the $450 check for fees.

{¶ 6} By August 24, 2001, Feldman had hired another attorney, and her new attorney asked respondent in writing to return respondent's file, the estate tax return, the check for the estate taxes, and any other documents prepared for Feldman's mother's estate. On October 15, 2001, Feldman's new attorney requested that the Summit County Probate Court issue an order for respondent to show cause why she had not filed the estate tax return. Also in October, Feldman stopped payment on the $20,145.35 check that she had given to respondent.

*The Miller Grievance*

{¶ 7} On January 20, 1997, Darrell K. Miller died intestate, leaving his spouse and their nine children as heirs. Shortly thereafter, Miller's widow retained respondent to represent her as the fiduciary in the administration of the Miller estate.

{¶ 8} Respondent advised her client that although she would normally have charged $20,000 for administering the estate, she would give the client "a deal" in this case and charge only $12,000 for her services. In September 1997, the client paid respondent $450 in filing and attorney fees.

{¶ 9} In July 1998, respondent filed an application to administer the Miller estate in the Tuscarawas County Probate Court, and the client paid her $6,000 in attorney fees. During July and August 1998, respondent filed with the court an

application for family allowance and an inventory and appraisal, and in February 1999, she filed a Notice to Distributee for all the heirs.

{¶ 10} In December 1999, respondent's client paid an additional $3,150 in attorney fees. Neither these nor any previous fees were approved by the probate court as required.

{¶ 11} In February 2000, respondent forwarded a quitclaim deed to the client for her children and other family members to sign. According to the client, respondent advised that the signatures need not be notarized. With this instruction, the client obtained the necessary signatures and returned the quitclaim deed to respondent.

{¶ 12} Thereafter, respondent notarized the signatures on the quitclaim deed by falsely certifying that on December 19, 1999, she had witnessed four members of the Miller family sign the deed personally. Respondent also falsely certified in the notarization that on May 24, 2000, she had witnessed eight more members of the Miller family sign the deed. In addition, respondent forged the signature of a former paralegal, a purported witness, nine times on the quitclaim deed.

{¶ 13} In February 2000, the probate court issued on respondent's application a certificate to transfer certain real property in the estate to respondent's client and the client's children. Respondent never recorded the certificate of transfer as required.

{¶ 14} Respondent's client often attempted to contact her during this representation; however, respondent rarely returned the client's calls. Frustrated by respondent's inattention, the client retained new counsel in October 2000 to represent her in the administration of the Miller estate. Respondent also did not reply to the successor attorney's letters in October and November 2000 asking that respondent return the client's case file.

{¶ 15} On the successor attorney's motion, the probate court ordered respondent to produce the Miller estate case file on or before January 16, 2001. Respondent did not comply, and the court ordered respondent to appear at a hearing on February 5, 2001. Respondent appeared on that date and turned the Miller estate case file over to the successor attorney.

{¶ 16} Upon review of the files, the successor attorney noticed irregularities in respondent's paperwork and filed a motion to vacate three earlier orders in the estate, which the court granted on June 4, 2001. In November 2001, the successor attorney moved for an order requiring respondent to return $9,000 paid to respondent in attorney fees. Prior to a hearing on the motions, respondent contacted the successor attorney and agreed to a joint entry for repayment. She failed to return the signed entry as promised, however, and she also failed on March 11, 2002, to appear and justify her fees.

{¶ 17} On March 20, 2002, the probate court ordered respondent to return $9,000 to the Miller estate within 30 days. Respondent did not comply. She was later ordered to show cause why she should not be held in contempt. The record does not reflect any further action on this matter.

{¶ 18} Consistent with the master commissioner's findings of misconduct as to Count I, the board found clear and convincing evidence that respondent had violated DR 1–102(A)(4) (barring conduct involving dishonesty, fraud, deceit, or misrepresentation), 1–102(A)(5) (barring conduct prejudicial to the administration of justice), 1–102(A)(6) (barring conduct that adversely reflects on an attorney's fitness to practice law), 6–101(A)(3) (barring neglect of an entrusted legal matter), 7–101(A)(2) (prohibiting the intentional failure to carry out a contract of employment), and 7–101(A)(3) (prohibiting intentional prejudice or damage to a client).

## Count II

{¶ 19} On August 28, 2002, relator sent a letter of inquiry by certified mail regarding the Feldman grievance to respondent at the office address listed with the Attorney Registration Section. The letter was returned as undeliverable. On September 12, 2002 and again on October 8, 2002, relator sent by certified mail two more letters of inquiry regarding the Feldman grievance to respondent's home address. Both letters were returned as unclaimed.

{¶ 20} In January 2003, respondent was personally served with a subpoena requiring her appearance for her deposition on February 5, 2003. Respondent appeared as directed and testified that she had moved from her previous residence in June 2002 and had not left a forwarding address. As of March 30, 2004, when relator filed the motion for default, respondent still had not corrected her home and business address on file with Attorney Registration.

{¶ 21} Based on the master commissioner's findings of misconduct as to Count II, the board found clear and convincing evidence that respondent had violated Gov.Bar R. V(4)(G) (requiring an attorney to cooperate in an investigation of misconduct) and VI(1)(D) (requiring an attorney to keep current the attorney's residence and office addresses on file with Attorney Registration).

## Sanction

{¶ 22} In recommending a sanction for this misconduct, the board considered the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). As an aggravating factor, the board found that respondent had a significant disciplinary record involving misconduct similar to that committed here. BCGD Proc.Reg. 10(B)(1)(a). The board also found that respondent had acted dishonestly, BCGD Proc.Reg. (10)(B)(2), engaged in a pattern of multiple offenses, BCGD Proc.Reg.

10(B)(1)(c) and (d), ignored the disciplinary process, BCGD Proc.Reg. 10(B)(1)(e), harmed vulnerable clients, BCGD Proc.Reg. 10(B)(1)(h), and failed to make restitution, BCGD Proc.Reg. 10(B)(2)(i). The board found no evidence in mitigation of respondent's misconduct.

{¶ 23} Relator urged the board to disbar, and consistent with the master commissioner's recommendation, the board recommended that respondent be disbarred.

{¶ 24} We agree that respondent violated DR 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), 6–101(A)(3), 7–101(A)(2), and 7–101(A)(3), and Gov.Bar R. V(4)(G) and VI(1)(D) as found by the board. We also agree that disbarment is the appropriate sanction for misconduct of this magnitude. As the master commissioner explained:

{¶ 25} "Here, we have the Respondent taking advantage of the trust of her clients over a period of five years. She didn't perform the work she agreed to do. She took fees she wasn't entitled to. She refused to promptly return client files which she wasn't entitled to keep. She forged signatures and lied in the acknowledgments in a deed which she had prepared.

{¶ 26} "Without minimizing her other [transgressions], the Respondent failed to obey her obligations to the courts of this state by complying with established rules and valid orders which were directed to her—and she, once again, thumbed her nose at established disciplinary requirements.

{¶ 27} "The Respondent's conduct demeans our system of justice, and our disciplinary process, and further erodes our professional image in the eyes of an already wary public.

{¶ 28} "Any questions that the panel may have had in the previous disciplinary case about the Respondent's honesty have been resolved in this case. The Respondent lacks the requisite moral compass to practice law."

{¶ 29} When an attorney has "seriously neglected clients' cases, has repeatedly deceived clients, has ignored investigative inquiries and resulting disciplinary proceedings, has been disciplined before for other serious misconduct, and has presented no mitigating evidence to justify leniency, the appropriate sanction is disbarment." *Toledo Bar Assn. v. Pommeranz*, 102 Ohio St.3d 26, 2004-Ohio-1586, 806 N.E.2d 509, ¶ 13. Respondent is therefore permanently disbarred from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

Jonathan E. Coughlan, Disciplinary Counsel, and Joseph M. Caligiuri, Assistant Disciplinary Counsel, for relator.